132 P.3d 1238

Patrick Y. TAOMAE, Barbara L. Franklin, Gene Bridges, Nan Kaaumoana, A. Joris Watland, George Harris, Hacksoon Andrea Low, Esther Solomon, Richard G. Chisholm, Michael J. Golojuch, Christopher A. Verleye, Heather K.L. Conahan, Juliet Begley, Pamela G. Lichty, Sheryl L. Nicholson, Eric G. Schnedier, Carolyn M. Golojuch; Colin Yost, William A. Harrison, Norman V. Bode, Rodney E. Aiu, Richard C. Jackson, Theodore N. Isaac, Mark R. Ewald, Rev. Michael G. Young, Paula F. Myers, Louis Rosof, Joan H. Rich, Susan L.

---

Arnett, Pamela O'Leary Tower, David Bettencourt, Lunsford Dole Phillips, Mary Anne Scheele, Raymond Scheele, Robert P. McPherson, Jean A. Evans, Donald E. Evans, and Arthur E. Ross, Plaintiffs

v.

Linda LINGLE, in her official capacity as Governor of the State of Hawai'i; and Dwayne D. Yoshina, in his official capacity as Chief Election Officer for the State of Hawai'i, Defendants.

No. 26962.

Supreme Court of Hawai'i.

April 28, 2006.

As Amended May 26, 2006.

See also, 108 Hawai'i 245, 118 P.3d 1188.

Lois K. Perrin (American Civil Liberties Union of Hawai'i Foundation) and Earle A. Partington, for Plaintiffs, on the request and reply.

Charleen M. Aina and Russell A. Suzuki, Deputy Attorneys General, for Defendants, in opposition.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Lois K. Perrin (Perrin) and Earle A. Partington (Partingtion), attorneys for Plaintiffs Patrick Y. Taomae, et. al. (Plaintiffs), request attorneys' fees and costs in the total amount of $62,132.50 incurred in connection with the original proceeding before this court in *Taomae v. Lingle,* 108 Hawai'i 245, 118 P.3d 1188 (2005). With regard to attorneys' fees, Perrin and Partington request $53,325.00 and $8,807.50, respectively. Each counsel's request for costs is set forth in the following table:

| ATTORNEY | ITEM | AMOUNT |
|---|---|---|
| Lois K. Perrin | Transcripts | $ 101.56 |
| | Filing Fees | 125.00 |
| | Printing/Copying of briefs/appendices | 84.00 |
| | Service of complaint | 46.87 |
| | TOTAL: | $ 357.43 |
| Earle A. Partington | Printing/copying of briefs/appendices | $1,399.75 |
| | TOTAL: | $1,399.75 |
| | TOTAL COSTS: | $1,757.18 |

The requested attorneys' fees are denied, and the requested reimbursement for costs is partially granted.

I.

Plaintiffs were the prevailing parties in the original proceeding wherein this court granted Plaintiffs' requests for (1) a declaration that House Bill 2789, House Draft 1, Senate Draft 1 is invalid, and (2) an injunction prohibiting Defendants Linda Lingle, in her official capacity as Governor of the State of Hawai'i, and Dwayne D. Yoshina, in his official capacity as Chief Election Officer for the State of Hawai'i (collectively, Defendants) from printing or publishing Question 1 as part of the Hawai'i Constitution. Plaintiffs were also ordered to submit their request for attorneys' fees and costs in the original proceeding pursuant to the procedure set forth in Hawai'i Rules of Appellate Procedure (HRAP) Rule 39(d) (2005).[1] *Id.* at 257, 118 P.3d at 1200; *see also* HRAP Rule 17 (2005).[2] In their Memorandum in Support of Motion, Plaintiffs maintain that "an award of fees and costs is appropriate in the instant case not merely because Plaintiffs prevailed but to deter Defendants and other public officials from repeatedly and intentionally disregarding the mandates of the Hawaii Constitution." Plaintiffs aver that (1) Hawai'i Revised Statutes (HRS) § 607-14.5 (Supp. 2005)[3] authorizes the award of such fees and

1. Hawai'i Rules of Appellate Procedure (HRAP) Rule 39(d) (2005), states in pertinent part:

    **(d) Request for fees and costs; objections.**
    (1) A party who desires an award of attorney's fees or costs shall request them by submitting an itemized and verified bill of fees or costs, together with a statement of authority for each category of items.... Requests for non-indigent attorney's fees and costs allowed by statute or contract shall be submitted in a form that substantially complies with Form 8 in the Appendix of Forms.
    (2) A request for fees and costs must be filed with the appellate clerk, with proof of service, no later than 14 days after entry of judgment. An untimely request for fees and costs may be denied.... If oral argument is had or additional work is performed thereafter, the attorney may submit a request for additional fees and costs.
    (3) Objections to requests for fees and costs must be filed with the appellate clerk, with

proof of service, within 10 days after service on the party against whom the fees and costs are to be taxed unless the time is extended by the appellate court. A reply to the objections must be filed with the appellate clerk, with proof of service, within 7 days after service of the objections on the initiating party.

2. HRAP Rule 17 (2005) provides the rules to be observed in original proceedings as follows:
    **ORIGINAL PROCEEDINGS.**
    Original actions, including applications for writs or other relief, shall conform to the requirements of any applicable statutes and to such orders as may be entered by the appellate court to which the case is assigned.

3. Hawai'i Revised Statutes (HRS) § 607–14.5 (Supp.2005) provides for the award of attorney's fees in civil actions as follows:
    **Attorneys' fees and costs in civil actions.** (a) In any civil action in this State where a party

costs inasmuch as Defendants' arguments in the underlying proceeding were frivolous, (2) a waiver of sovereign immunity does not preclude an award of fees and costs, and (3) HRS § 11–175 (1993)[4] vests this court with "the inherent equitable power" to impose costs as it deems necessary or proper to ensure future compliance, particularly "in cases that presented novel and constitutional issues ... that affected the public interest."[5] Accordingly, Plaintiffs maintain that they are entitled to reasonable attorneys' fees and costs using the lodestar calculations as well as the factors under the decision of the Ninth Circuit Court of Appeals in *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir.1975).[6] In addition, Plaintiffs maintain that they

"may" recover an amount greater than the lodestar figure where the "applicant has met the burden of showing that such adjustment is necessary to the determination of a reasonable fee." (Quoting *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir.1996).)

In their Memorandum in Opposition, Defendants counter that no award of attorneys' fees is proper inasmuch as (1) the State's sovereign immunity bars an award of attorneys' fees, and (2) no statutory basis exists for an award of attorneys' fees. In the alternative, Defendants contend that even if an award of attorneys' fees is authorized, (1) the amount requested is unreasonable, (2) the lodestar multiplier applies to fees and not

---

seeks money damages or *injunctive relief*, or both, against another party, and the case is subsequently decided, *the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).*

(b) In determining the award of attorneys' fees and costs and the amounts to be awarded, *the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action. In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c).* If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.

(c) *A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous.* If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys' fees and costs based on those claims or defenses under this section. (Emphases added.)

4. HRS § 11–175 (1993) specifies this court's powers with regard to election contests in the following manner:

   **Powers of supreme court; costs.** The supreme court may compel the attendance of

witnesses, punish contempts, and do whatsoever else may be necessary fully to determine the proceedings, *and enforce its decrees therein.* The court may make such special rules as it may find necessary or proper. *The costs shall be as provided by the supreme court by rule.* (Emphases added.) This court has construed HRS § 11–175 to provide the supreme court with the authority "to establish rules, *to sanction the parties,* and to compel the parties to provide necessary written information and written testimony [in order that this court] may fully adjudicate the dispute before us." *Akaka v. Yoshina*, 84 Hawai'i 383, 386, 935 P.2d 98, 101 (1997).

5. Although Plaintiffs object to Defendants' assertion that the request under HRS § 11–175 is in the form of "sanctions," Plaintiffs nevertheless state that "[g]iven the readily apparent need to deter similar unconstitutional conduct in the future and to reward Plaintiffs' counsel for bringing an unpopular issue of constitutional significance before the court, the court is authorized to award fees and costs to Plaintiffs ... through its inherent, equitable power."

6. Under *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir.1975), a court may enhance or reduce the lodestar figure based on an evaluation of the factors not already subsumed in the initial lodestar calculation including (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fees; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and availability of the attorney; (9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases.

costs, (3) Partington's request for paralegal fees is not sufficiently documented, (4) Plaintiffs' counsel overstated their hourly rates, (5) no fees should be assessed based on Plaintiffs' counsels' time soliciting clients and preparing retainer agreements, responding to general inquiries about elections on election day, preparing press releases, or observing oral arguments in unrelated cases, (6) inasmuch as only Perrin presented oral argument, Partington's time for oral arguments should not be included, (7) Plaintiffs are not entitled to a 1.5 multiplier, and (8) Plaintiffs' costs are overstated. However, Defendants concede that Plaintiffs should be allowed costs at a reduced amount of $1,115.00 "for their filing fee and their copying costs under [HRAP] Rule 39(c)(3) and (4)." [7]

In addition to providing a supplemental time sheet for work performed by Partington's paralegal, Plaintiffs reply that (1) sovereign immunity prohibits suits seeking money damages against the State "except where there has been a 'clear relinquishment' of immunity and the State has consented to be sued[,]" (quoting *Bush v. Watson*, 81 Hawai'i 474, 481, 918 P.2d 1130, 1137 (1996) (citing *Pele Defense Fund v. Paty*, 73 Haw. 578, 607, 837 P.2d 1247, 1265 (1992))), and inasmuch as the underlying suit is not for monetary damages, sovereign immunity does not preclude the award of fees and costs, (2) the court's inherent equitable power pursuant to HRS §§ 11–175 and 602–5(7) (1993) [8] authorizes the award of attorneys' fees and costs in this

election case affecting the public interest,[9] (3) the fees and costs sought are reasonable, and (4) Plaintiffs are entitled to a 1.5 multiplier [as to fees] particularly because "the case is of the type that attorneys are unwilling to take for fear of ostracization and out of concern for their personal safety[,]" (quoting *Guam Soc'y*, 100 F.3d at 697).

## II.

As a general rule, "each party is responsible for paying his or her own litigation expenses." *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 444, 32 P.3d 52, 88 (2001) (quoting *Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i*, 92 Hawai'i 432, 439, 992 P.2d 127, 134 (2000)). This "American Rule" is subject to several exceptions that allow fee-shifting wherein the losing party pays the fees of the prevailing party "when so authorized by statute, rule of court, agreement, stipulation, or precedent." *Fought & Co. v. Steel Eng'g and Erection, Inc.*, 87 Hawai'i 37, 50–51, 951 P.2d 487, 500–01 (1998).

## III.

In connection with HRS § 607–14.5, Plaintiffs maintain that Defendants' arguments were "manifestly and palpably without merit," "without the support of precedent," and thus frivolous.[10] (Quoting *Morrison-Knudsen Co. v. Makahuena Corp.*, 66 Haw.

---

7. HRAP Rule 39(c)(3) & (4) (2005) authorizes recovery of certain costs in the following manner:

> (c) **Costs defined** .... (3) the fee for filing the appeal; (4) the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20 per page; ....

8. HRS § 602–5(7) (1993), entitled "Jurisdiction and powers," authorizes this court to "make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice in matters pending before it."

9. In addition, Plaintiffs appear to request that this court apply the private attorney general doc-

trine. While the private attorney general doctrine is not specifically mentioned in Plaintiffs' reply memorandum, they rely on cases which allude to or articulate this doctrine.

10. In summary, Plaintiffs contend that Defendants' arguments in *Taomae v. Lingle*, 108 Hawai'i 245, 118 P.3d 1188 (2005), were frivolous, namely (1) that "[n]othing [r]equires a[b]ill's [t]itle to [i]nclude a[r]eference to the [p]roposed [c]onstitutional [a]mendment [i]t [c]ontains," (2) that "[t]he [t]hree [r]eadings [r]equirement [d]oes [n]ot [r]equire a[b]ill to [b]e [r]ead [t]hree [t]imes [e]ach [t]ime [i]t [i]s [a]mended or [t]hree [t]imes [o]nce [i]t [i]ncludes a[c]onstitutional [a]mendment," (3) that "the process by which H.B. 2789 ... was approved was in conformity with the past practice of the legislature ...," (4) that no bright line rule existed in the application of articles III and XVII, (5) that the political question doctrine applies, and (6) that the Fourteenth Amendment controls.

663, 672 n. 5, 675 P.2d 760, 767 n. 5 (1983)). However, Plaintiffs appear to presume that because this court decided that the legislature's actions constituted plain, clear, manifest, and unmistakable violations of the procedures under article XVII, § 3, and article III, §§ 14 and 15 of the Hawai'i Constitution, *Taomae*, 108 Hawai'i at 251, 118 P.3d at 1194, such actions were frivolous within the meaning of HRS § 607–14.5.

In this regard, Defendants' citations to federal cases are persuasive. Analogously, it has been said that "[a] plaintiff's erroneous interpretation in a case of first impression should not, without more, lead the court to conclude that the plaintiff's claims are frivolous, unreasonable, or without foundation." *Baaske v. City of Rolling Meadows*, 191 F.Supp.2d 1009, 1018 (N.D.Ill.2002) (quoting *Adkins v. Briggs & Stratton Corp.*, 159 F.3d 306, 307 (7th Cir.1998)). Defendants maintain that "when legal principles are 'firmly fixed in [a court's] jurisprudence,' a litigant's action contrary to such principles might [then] be 'frivolous, unreasonable, or groundless.'" (Quoting *Unity Ventures v. County of Lake*, 894 F.2d 250, 255 (7th Cir.1990)). It is concluded that because the legal principles addressed in this case were not firmly established, Defendants' actions were not frivolous. Therefore, attorneys' fees under HRS § 607–14.5 are denied.

## IV.

■ In response to Defendants' contention that sovereign immunity bars recovery of fees in this case, Plaintiffs assert that under *Fought*, "this court held that sovereign immunity did not preclude an award of appellate fees and costs against the State Department of Transportation ("DOT") in an action

that sounded in breach of contract." (Citing *Fought*, 87 Hawai'i at 56, 951 P.2d at 506.) In that case, the DOT contended that the doctrine of sovereign immunity precluded the award of fees and costs under HRS § 607–14 (1993).[11] *Fought*, 87 Hawai'i at 54, 951 P.2d at 504. This court, however, observed that the DOT's argument "[a]ppears to have been settled by *Hawaiian Isles Enterprises Inc. v. City & County of Honolulu*, 76 Hawai'i 487, 493, 879 P.2d 1070, 1076 (1994)." *Id.* In *Hawaiian Isles*, this court overruled *Bowler v. Bd. of Immigration*, 7 Haw. 715 (1889) (prohibiting the award of attorney's fees against government entities), ruling that "HRS § 607–14 governs the award of attorneys' fees 'in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing' and does not limit an award of attorneys' fees to non-governmental parties." *Hawaiian Isles*, 76 Hawai'i at 493, 879 P.2d at 1076 (quoting HRS § 607–14 (1993)). *Fought* noted that "[t]he legislature has had numerous opportunities to correct our interpretation of HRS § 607–14 if it deemed that interpretation to be mistaken. It has not done so." 87 Hawai'i at 54–55, 951 P.2d at 504–05.

It was also explained in *Fought* that "HRS § 661–1(1) *expressly* waives the state's immunity from suit upon any contract, expressed or implied." [12] *Id.* at 56, 951 P.2d at 507 (emphasis in original) (internal quotation marks omitted). Hence, *Fought* concluded that "a further waiver of sovereign immunity is not necessary in order for HRS § 607–14 to apply to the state and its respective agencies in matters in which, by virtue of the express waiver of sovereign immunity set forth in HRS § 661–1, the state ... has become a party." *Id.*

11. HRS § 607–14 (1993), entitled "Attorneys' fees in actions in the nature of assumpsit, etc.," provides for attorney's fees to the prevailing party in actions in the nature of assumpsit, in relevant part, as follows:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execu-

tion may issue, a fee that the court determines to be reasonable.

12. In relevant part, HRS § 661–1 (1993), entitled "Jurisdiction," provides that the circuit courts shall have original jurisdiction over "[a]ll claims against the State founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature[.]"

Without arguing that HRS § 661–1 applies, Plaintiffs seek to extend *Fought* here in declaring that "if sovereign immunity does not bar the underlying action, then no waiver is required for the imposition of fees and costs." Plaintiffs maintain that "[b]ecause it is undisputed that sovereign immunity did not bar the instant contest, th[is] court should conclude that 'a further waiver of sovereign immunity is not necessary in order' to assess the requested fees and costs pursuant to the court's inherent powers, [HRS] §§ 11–175, and 607–14.5[,] as other courts have done." [13]

However, Plaintiffs' contention is not persuasive and, therefore, an award of fees based on this argument is denied. First, the matter before this court is not in the nature of assumpsit and does not implicate HRS §§ 607–14 or 661–1. Second, simply because "sovereign immunity did not bar the instant contest," as the Plaintiffs state, it cannot be assumed that an assessment of fees and costs is appropriate. It is true that sovereign immunity does not bar the proceedings before this court inasmuch as this case involves injunctive relief. *See Pele Defense Fund*, 73 Haw. at 610 n. 21, 837 P.2d at 1266 n. 21 (noting that sovereign immunity "will not preclude suits brought to enjoin" violations of the Hawai'i Constitution). However, the fact that sovereign immunity does not preclude this court from addressing the merits of this case does not necessarily result in a right to attorneys' fees. Here, Plaintiffs have not demonstrated an entitlement to fees under *Fought.* And unlike in *Fought*, no statute authorizes a shift in fees to Defendants. Accordingly, Plaintiffs' request for attorneys' fees on this basis must be denied.

## V.

█ With regard to HRS § 11–175, Plaintiffs reason that this court has the inherent

equitable power to impose attorneys' fees and costs for "it is in the interest of justice and sound public policy to impose attorneys' fees and costs on Defendants because of the brazen nature of their willful defiance of the Hawaii Constitution." As earlier noted, pursuant to HRS § 11–175, this court is "vested with certain statutory powers to establish rules, *to sanction the parties*, and to compel the parties to provide necessary written information and written testimony so that we may fully adjudicate the dispute before us." *Akaka v. Yoshina*, 84 Hawai'i 383, 386, 935 P.2d 98, 101 (1997). According to Plaintiffs, "[w]ithin a period of less than two years, Defendants violated the same article of the Constitution not once but twice: first in *Watland v. Lingle*, 104 Hawai'i 128, 85 P.3d 1079 (2004), and in the instant case." Hence, Plaintiffs argue, then, that an award of fees "would serve to protect the Hawaii Constitution against future unabashed violations."

Nevertheless, it cannot be said that Defendants engaged in repeated violations of the same matters under the Hawai'i Constitution. Despite the fact that the issues involved in *Watland* and in this case implicated article XVII sections 2 and 3, the issues in *Watland* concerned the State's failure to comply with publication and disclosure requirements for amendments to the Hawai'i Constitution. On the other hand, this case raised issues of the State's compliance with the mandate in the Hawai'i Constitution that proposed amendments be titled appropriately under article XVII, section 3 and article III, section 14, and with the requirement that amendments be made after three readings in accordance with article XVII, section 3 and article III, section 15. Hence, the issues presented in this case differed from those in *Watland.* It is concluded, then, that under the circumstances, sanctions in the form of attorneys' fees pursuant to HRS § 11–175 are not appropriate. [14]

---

13. With respect to this assertion, it appears that Plaintiffs meant to refer, at least in part, to a section of their reply memorandum discussing the inherent equitable powers of other jurisdictions. In any event, a grant of attorneys' fees based on the inherent equitable powers of this court is addressed in note 14, *infra.* ·

14. Plaintiffs' arguments that attorneys' fees should be awarded pursuant to (1) HRS § 602–5(7), (2) this court's inherent equitable powers, and (3) the private attorney general doctrine, were raised for the first time in their reply memorandum. *See In re Water Use Permit Applications*, 96 Hawai'i 27, 29, 25 P.3d 802, 804 (2001) (noting that the private attorney general doctrine is one of the "equitable exceptions to the 'Ameri-

## VI.

■ Defendants concede that costs are authorized by HRAP Rule 39(b) (2005),[15] HRS § 11–175,[16] and HRS § 607–24 (1993).[17] However, Defendants aver that Plaintiffs' request for reimbursement for (1) printing more than ten copies of the briefs and appendices, (2) a copy of the transcript in *Taomae v. Lingle*, Civil No. 04–1–1889–10VSM, and (3) service of the election contest complaint on the chief election officer by a process server exceeds these authorities. The request for reimbursement for the costs for printing and copying is partially granted, the request for costs of a transcript is denied, and the request for costs of service of process is granted.

First, HRAP Rule 39(c)(4)[18] limits the copying of costs to twenty cents per page for "producing the necessary copies of briefs and appendices." According to Defendants, the parties were required to serve two copies of their briefs and appendices on each other, and file a total of eight copies of their briefs and appendices with this court. Because Plaintiffs' briefs and appendices totaled no more than 330 pages, a reasonable amount for printing and copying costs with respect to service on the parties only would be $726.00.[19]

can Rule'" that "each party is responsible for paying his or her own litigation expenses" (quoting *Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i*, 92 Hawai'i 432, 439, 992 P.2d 127, 134 (2000))); *Farmer v. Admin. Dir. of the Courts*, 94 Hawai'i 232, 241, 11 P.3d 457, 466 (2000) (observing that this court's inherent authority is codified under HRS § 602–5(7)); *CARL Corp. v. State, Dep't Of Educ.*, 85 Hawai'i 431, 460, 946 P.2d 1, 30 (1997) (stating that "among courts' inherent powers are the powers to create a remedy for a wrong even in the absence of specific statutory remedies, and to prevent unfair results" (quoting *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994))). Accordingly, we deny the request for fees on such grounds. *Cf. In re Hawaiian Flour Mills, Inc.*, 76 Hawai'i 1, 14 n. 5, 868 P.2d 419, 432 n. 5 (1994) (holding that arguments raised for the first time in the reply briefs on appeal were deemed waived); HRAP Rule 28(d) (2005) (stating that "[t]he reply brief shall be confined to matters presented in the answering brief"). In light of our decision not to award attorneys' fees, we need not address Plaintiffs' arguments regarding enhancement of the lodestar figure under *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691 (9th Cir.1996).

15. HRAP Rule 39(a) & (b) (2005) provides the allocation of costs in civil matters on appeal as follows:

(a) **Civil costs; to whom allowed.** Except in criminal cases or as otherwise provided by law, if an appeal or petition is dismissed, costs shall be taxed against the appellant or petitioner upon proper application unless otherwise agreed by the parties or ordered by the appellate court; if a judgment is affirmed or a petition denied, costs shall be taxed against the appellant or petitioner unless otherwise ordered; *if a judgment is reversed or a petition granted, costs shall be taxed against the appellee or the respondent unless otherwise ordered;* if a judgment is affirmed in part and reversed in part, or is vacated, or a petition granted in part and denied in part, the costs shall be allowed only as ordered by the appellate court. If the side against whom costs are assessed has multiple parties, the appellate court may apportion the assessment or impose it jointly and severally.

(b) **Costs for and against the State of Hawaii.** *In cases involving the State of Hawaii or an agency or officer thereof, if an award of costs against the State is authorized by law, costs shall be awarded in accordance with the provisions of this rule;* otherwise costs shall not be awarded for or against the State of Hawaii, its agencies, or its officers acting in their official capacities.

(Emphases added.)

16. As noted earlier, HRS § 11–175 provides in relevant part that "[t]he costs [in an election contest in this court] shall be as provided by the supreme court by rule."

17. HRS § 607–24 (1993), entitled "No bonds or costs to be filed or paid by government," provides in relevant part the reimbursement of costs to a party prevailing against the State, as follows:

In all cases in which a final judgment ... is obtained against the State, ... any and all deposits for costs made by the prevailing party shall be returned to the prevailing party ... and the prevailing party shall be reimbursed by the State ... all actual disbursements, not including attorney's fees or commissions, made by the prevailing party and approved by the court.

18. Application of the HRAP for recovery of costs appears to be appropriate in light of this court's order in *Taomae* that Plaintiffs seek attorneys' fees and costs pursuant to HRAP Rule 39, as well as the authority of this court under HRAP Rule 17 to issue orders in relation to original proceedings.

19. This figure is based on the cost of printing one (1) set of originals totaling 330 pages each, and

However, Defendants acknowledge that Plaintiffs "had to serve four extra sets of their reply brief" on the legislature as amici in the original proceedings. Defendants also state that "[e]ven if Plaintiffs were allowed reimbursement for all the material they filed, ... their original request ... would have to be reduced to approximately $990.00." Defendants then state that "Plaintiffs should only be allowed $1,115.00 for their filing fee and their copying costs." In light of the fact that Defendants pose no objection to an award of $990.00 as a reasonable amount for such costs, this amount is awarded.[20] *See also* HRAP Rule 39(c)(5) (authorizing an award for "any other costs authorized by statute or rule").

Second, HRAP Rule 39(c)(1) limits reimbursements for the costs of transcripts to "the cost of the original and one copy of the reporters transcripts *if necessary for the determination of the appeal*." (Emphasis added.) The transcripts involved are from *Taomae v. Lingle*, Civil No. 04–1–1889–10VSM, the precursor to the original proceedings. The underlying proceeding, as Defendants state, "was an original action and not an appeal, and what occurred in the earlier circuit court proceeding was not material or necessary for determining the issues presented in this [c]ourt." Plaintiffs have not argued that the transcript was necessary in this action. Therefore, the $101.56 reimbursement sought for transcripts is disallowed.

Costs as to service of the complaint on the chief election officer are granted. HRS § 11–172 (1993) requires that a copy of an election contest complaint be "delivered to the chief election officer[.]" HRS § 11–172 does not expressly indicate how delivery should be effected. Plaintiffs document their request for costs for service of the complaint with an invoice from what appears to be a private party authorized by HRS § 634–21 [21] to effectuate service of process.[22] Defendants do not object to the reasonableness of the amount sought by Plaintiffs. Rather, Defendants only argue that reimbursement for such costs "be disallowed because formal service was not necessary[,]" and that "HRS § 11–172 merely requires that a copy of an election contest complaint be 'delivered to the chief elections officer.'" However, it was reasonable for a party to serve the chief elections officer in this case especially when constitutional issues are at issue. Therefore, Plaintiffs' request for reimbursement of $46.87 is granted.

Accordingly, Plaintiffs are granted a reduced award of costs as follows:

| ATTORNEY | ITEM | AMOUNT |
| --- | --- | --- |
| Lois K. Perrin | Transcripts | $ 0.00 |
| | Filing Fees | 125.00 |
| | Printing/copying of briefs/appendices | 0.00 [23] |
| | Service of Complaint | 46.87 |
| | TOTAL | $ 171.87 |
| Earle A. Partington | Printing/copying of briefs/appendices | $ 990.00 |
| | TOTAL: | $ 990.00 |
| | TOTAL COSTS: | $1,161.87 |

ten (10) copies, eight (8) of which were filed with this court, and two (2) copies served on Defendants.

**20.** In addition, HRAP Rule 39 does not preclude the recovery of costs of printing and copying pleadings for the benefit of amicus curiae. Given the reasonableness of providing the legislature with such copies in the present case, this cost is granted.

**21.** HRS § 634–21 (Supp.2005), entitled "Service of process, by whom[,]" mandates that service of process in civil actions and proceedings "be made by the sheriff or the sheriff's deputy, ... any investigator appointed and commissioned by the director of commerce and consumer affairs

..., or a person authorized by the rules of court."

**22.** The amount of $46.87 includes not only costs for service of the complaint in the amount of $10.00, but also includes a $25.00 fee for service of summons, as well as a $10.00 "same day service" surcharge. Defendants do not object to the reasonableness of the costs incurred by Plaintiffs for service of the summons or the surcharge for "same day service."

**23.** Only Partington provided an itemization of costs for copies. HRAP Rule 39(d) requires that "an itemized and verified bill of fees or costs" be submitted. However, Defendants did not object to printing and copying costs to the extent that $990.00 is a reasonable amount for these costs.

## VII.

Based on the foregoing, Plaintiffs' request for attorneys' fees is denied and their request for costs in the amount of $1,161.87 is granted and shall be taxed against Defendants.